# UNITED STATES DISTRICT COURT
for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>Funds up to $99,999.99 in the Wells Fargo Bank Deposit Accounts Associated with Debit Card No. 4737 0291 0331 8904 in the name of Richard Verrett | Case No.   22-mj-38 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of ____Arizona____ is subject to forfeiture to the United States of America under ____18____ U.S.C. § ____982(a)(2)(B)____ *(describe the property)*: and 18 U.S.C. § 981(a)(1)(C)

Any and all funds up to $99,999.99 in the Wells Fargo Bank, N.A. deposit accounts associated with Wells Fargo Bank debit card number 4737 0291 0331 8904 in the name of Richard Verret.

The application is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

Application being submitted by email/pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41.3(d)(l) on the: __14th__ of __April__ , 2022.

DARIUSH J VOLLENWEIDER
*Digitally signed by DARIUSH J VOLLENWEIDER*
*Date: 2022.04.14 14:14:36 -05'00'*

*Applicant's signature*

Dariush Vollenweider, Special Agent
*Printed name and title*

Date: _____

City and state:  Baton Rouge, Louisiana

*Judge's signature*

Erin Wilder-Doomes, Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FUNDS UP TO $99,999.99 IN THE CIBC BANK USA DEPOSIT ACCOUNTS ASSOCIATED WITH DEBIT CARD NUMBER 5254 6200 0025 5817 IN THE NAME OF RICHARD VERRET; FUNDS UP TO $99,999.99 IN THE WELLS FARGO BANK DEPOSIT ACCOUNTS ASSOCIATED WITH DEBIT CARD NUMBER 4737 0291 0331 8904 IN THE NAME OF RICHARD VERRET; FUNDS UP TO $99,999.99 IN THE CITIZENS BANK DEPOSIT ACCOUNTS ASSOCIATED WITH DEBIT CARD NUMBER 4427 8800 3223 8075 IN THE NAME OF RICHARD VERRET | MAGISTRATE NO. 22-mj-38  **UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF APPLICATION
### FOR SEIZURE WARRANTS

I, Dariush Vollenweider, being duly sworn, state the following:

### Affiant's Background

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) assigned to the Resident Agent in Charge (RAC) office in Baton Rouge, Louisiana. I have been employed as such since March 2010. I received 22 weeks of specialized training at the Federal Law Enforcement Training Center in Glynco, Georgia. This specialized training covered all aspects of criminal investigations. In my law enforcement career, I have worked on cases involving a variety of criminal offenses, and over the past two years, I have focused on investigating criminal violations that occur on the dark web and clear web that include use of internet protocol (IP) addresses.

2. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of three seizure warrants for accounts at three financial institutions, it does not include all the facts that I have learned during the investigation.

3. Where the contents of documents and the actions and statements of others are reported herein, they are, unless otherwise indicated, reported only as necessary to establish probable cause for the proposed seizures.

## Purpose of the Affidavit

I make this affidavit in support of the Government's application for three seizure warrants to seize the accounts associated with the below-listed debit card numbers at the below-listed corresponding financial institutions:

A. Any and all funds up to $99,999.99 in the CIBC (Canadian Imperial Bank of Commerce) Bank USA deposit accounts associated with CIBC Bank USA debit card number 5254 6200 0025 5817 in the name of Richard Verret ("SUBJECT ACCOUNT(S) #1");

B. Any and all funds up to $99,999.99 in the Wells Fargo Bank deposit accounts associated with Wells Fargo Bank debit card number 4737 0291 0331 8904 in the name of Richard Verret ("SUBJECT ACCOUNT(S) #2"); and

C. Any and all funds up to $99,999.99 in the Citizens Bank deposit accounts associated with debit card number 4427 8800 3223 8075 in the name of Richard Verret ("SUBJECT ACCOUNT(S) #3");

(collectively, the "SUBJECT ACCOUNTS").

4. As set forth herein, I believe that probable cause exists to conclude that located in SUBJECT ACCOUNT(S) #1, SUBJECT ACCOUNT(S) #2, and SUBJECT ACCOUNT(S) #3 are the proceeds of violations of 18 U.S.C. § 1029 (hereinafter referred to as the ("TARGET OFFENSE")), and are subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2)(B) (criminal forfeiture authority) and 18 U.S.C. § 981(a)(1)(C) (civil forfeiture authority). Accordingly, I believe that there are sufficient grounds for the issuance of the three requested seizure warrants

under 18 U.S.C. § 981(b) (civil seizure warrant authority) and 21 U.S.C. § 853(e) and (f) (criminal seizure warrant authority).

5.     I previously submitted a very similar affidavit to Magistrate Judge Richard L. Bourgeois, Jr., on April 1, 2022, requesting authority to seize two domain names operated and controlled by Richard Verret. On April 1, 2022, Magistrate Judge Richard L. Bourgeois, Jr., signed a seizure warrant (22-mj-27) authorizing the seizure of www.miami24k.com ("SUBJECT DOMAIN #1") and signed a seizure warrant (22-mj-28) authorizing the seizure of www.miami.gift ("SUBJECT DOMAIN #2").

**Statutory Authority for Seizures**

**18 U.S.C. § 1029**– Access Device Fraud

(a) Whoever-
   (1) Knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices;
      . . .

   (6) without the authorization of the issuer of the access device, knowingly and with intent to defraud solicits a person for the purpose of (A) offering an access device; or (B) selling information regarding or an application to obtain an access device
      . . . .

(c)(1) The punishment for an offense under subsection (a) of this section is . . . (C) in either case, forfeiture to the United States of any personal property used or intended to be used to commit the offense.

   (2) The forfeiture of property under this section, including any seizure and disposition of the property and any related administrative and judicial proceeding, shall be governed by section 413 of the Controlled Substances Act . . . .

**18 U.S.C. § 982(a)(2)(B)** – Civil Forfeiture

The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate section . . . 1029 . . . of this title shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

3

**18 U.S.C. § 981** – Civil Forfeiture

    (a)(1) The following property is subject to forfeiture to the United States:

        (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . 1029 . . . of this title . . . .

    (b)    (1) Except as provided in Section 985, any property subject to forfeiture to the United States under subsection (a) may be seized by the Attorney General and, in the case of property involved in a violation investigated by the Secretary of the Treasury or the United States Postal Service, the property may also be seized by the Secretary of the Treasury or the Postal Service, respectively.

        (2) Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure . . . .

**21 U.S.C. § 853(f)** – Warrant of Seizure

The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection € may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

**21 U.S.C. § 853(l)** - Jurisdiction to enter orders

The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

    6.    I believe that seizure warrants for the SUBJECT ACCOUNTS would secure the property and prevent it from being moved, transferred, or depleted. Because money in a bank account is fungible and easily transferable, I believe that seizure warrants are the appropriate means to secure these funds, and that a restraining order or protective order would not be sufficient. I am advised that a seizure warrant may be necessary to secure funds in a bank account because "[i]n cases involving funds in a bank account … banks do not always inform their personnel of the existence of a restraining order in a timely way, and … there have been instances where the bank's failure to do so has resulted in the movement of funds beyond the jurisdiction of the court before

4

the restraining order was put in place." Cassella, *Asset Forfeiture in the United States*, p. 99 & n. 12 (2d. ed.2013) (*citing United States v. Dupree*, 781 F.Supp.2d. 115 (E.D.N.Y. 2011)). "[S]erving a seizure warrant usually ensures that the funds are frozen … *without delay*." *Id.* at 99 (emphasis added).

7.  I am further advised that, in essence, Section 984 allows the United States to seize for civil forfeiture identical property found in the same place where the guilty property has been kept. *See United States v. All Funds Presently on Deposit at American Express Bank*, 832 F. Supp. 542, 556 (E.D.N.Y. 1993). I am advised that, pursuant to 18 U.S.C. § 984(a)(1)(B), this affidavit need not demonstrate that the monies now in the SUBJECT ACCOUNTS are the particular monies involved in the TARGET OFFENSE, so long as the forfeiture is sought for other funds on deposit in that same account. Moreover, I am advised that the fungibility rule of Section 984(b) cannot reach back in time for an unlimited period but rather applies so long as the action to forfeit the property is commenced within one year from the date of the offense giving the basis for the forfeiture. *See United States v. $79,650 Seized from Bank of America account ending in -8247, in name of Afework*, 2009 WL 331294, *3 (E,D, Va. Feb. 9, 2009). Here, as described above, the dates of the offense giving rise to the seizure are within the one-year period.

## Technical Background

8.  Based on my training and experience and information learned from others, I am familiar with the technical terms described below.

9.  <u>Internet Protocol Address</u>:  An Internet Protocol address (IP address) is a unique numeric address used by computers on the Internet.  An IP Address is a series of four numbers, each in the range 0-255, separated by periods (<u>e.g.</u>, 121.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that

5

computer may be directed properly from its source to its destination. An IP address acts much like a home or business street address -- it enables computers connected to the Internet to properly route traffic to each other. The assignment of IP addresses to computers connected to the Internet is controlled by ISPs.

10. <u>Domain Name</u>: A domain name is a simple, easy-to-remember way for humans to identify computers on the Internet, using a series of characters (<u>e.g.</u>, letters, numbers, or other characters) that correspond with a particular IP address. For example, "usdoj.gov" and "cnn.com" are domain names.

## Probable Cause for Seizures

*Background*

11. This application arises from an investigation into Richard VERRET ("VERRET") who owns and operates websites that he uses to advertise and sell gift card account numbers for restaurants, grocery stores, entertainment venues, and other retail business chains. The investigation revealed that VERRET obtains the account numbers by fraud, without the knowledge, consent or authorization of the gift cards' issuers or actual owners.

12. In May of 2019, HSI agents received information suggesting that an individual in Canada was using computer techniques to steal gift card information and then re-sell the information over the internet. According to a confidential witness, VERRET works with computer programmers to create computer "bots" capable of illegally accessing the websites of companies that issue gift cards or stored value cards. The bots attack the websites using "botnets,"[1] which test millions of combinations of gift card numbers and personal identification numbers (or PINs)

---

[1] Based on my training, knowledge, and experience, I know that a botnet is a group of computers that are controlled and operated towards a specific purpose, usually without the real owner's knowledge or permission.

6

to try to identify legitimate gift card accounts that contain positive balances. Once VERRET has identified an account with a significant positive balance, he will keep a record of the account number and PIN, and then either (a) create a new, fraudulent gift card containing the stolen account information, and sell the new gift card on-line, (b) sell the stolen account information as raw data, or (c) use the information to make purchases himself.

13. In a series of interviews with law enforcement agents, the witness described the subject's gift card business and provided agents with communications between him and the subject that tended to corroborate his statements. For instance, the witness provided agents a copy of a message he sent to the subject on January 30, 2019, in which he asked, "Hey can you hook me up with some more massage anvy [sic] when you get the chance?" (The witness was referring to Massage Envy, a U.S.-based massage and skin care chain with several locations in Baton Rouge, Louisiana.) Approximately two minutes later, the subject responded by sending a series of account numbers for valid gift card accounts at Massage Envy.

14. According to the witness, as of early 2019, the subject was operating an online store called the "Lux Gift Card Shop," which was accessed by visiting the website www.giftcards.gg. Agents determined that the store was hosted at the time by a company called "Selly, LLC" ("Selly"), an e-commerce website similar to eBay. As the investigation continued, agents obtained records for the store from Selly. According to the records, in April 2019, Selly banned the user who was operating the "Lux Card Gift Shop" (who, at the time, was identified by the username "luxury187"), based on the company's concerns that the user was engaging in fraud.

15. In May of 2019, posing as the witness, I began communicating with the subject through the same social media applications (namely, Discord and Telegram) that the witness had previously used in his own communications with the subject.

7

16.     On May 30, 2019, acting in an undercover capacity, I sent the subject a message and represented that I had a "bulk buyer" who was interested in purchasing some physical gift cards for Red Wing Shoes, an American footwear company. In a series of communications over the next several weeks, the subject indicated that he would encode twenty-five (25) Red Wing gift cards, each having a value of $100, and he directed me to mail him the blank cards at an address in Quebec, Canada. In late June, the subject and I exchanged numerous messages in which the subject confirmed that he received the cards, provided me with the gift card numbers and balances for the accounts he would use to re-encode the cards, and then confirming that he had mailed the cards back to an address in Louisiana that had been provided to him. Eventually, I received a package (which had been mailed from Quebec) that contained twenty-five access device cards, each of which was programmed to access an authentic Red Wing gift card account.

*Domain Name of [www.miami24k.com](www.miami24k.com)*

17.     Meanwhile, in early June of 2019, in an online conversation with the subject, the subject disclosed that he had moved his store to a new website, www.miami24k.com (SUBJECT DOMAIN NAME #1), as shown in the excerpt below:



18.     Meanwhile, through the investigation, the subject was identified as Richard Verret (DOB 12/5/1981, Canadian Passport No. HP819644), who resides in Quebec, Canada. This is based on (a) statements made by the subject during online communications, (b) text messages sent to and received from the subject, (c) records related to the subject's border crossings, and (d) video recordings of certain transactions made by the subject, among other evidence.

19.     On July 17, 2019, HSI agents accessed the SUBJECT DOMAIN NAME #1 to conduct an undercover purchase of ten (10) Whataburger gift card numbers. (Whataburger is a fast-food restaurant chain with several hundred locations in Texas and across the United States.) Upon visiting the SUBJECT DOMAIN NAME #1, users are re-directed to a gift card shop located at https://miami.atshop.io, where users can browse from gift cards to dozens of major chain restaurants, entertainment centers, and other retail stores. On July 27, 2019, the agents placed an order for ten Whataburger gift cards, which were advertised as having a value of $5 each;

9

accordingly, ten cards would be worth $50. The website's sales price for all ten cards, however, was $15. Using an undercover e-mail address controlled by HSI, agents completed the purchase and sent payment via PayPal for the gift cards. After placing the order, the undercover e-mail address received an e-mail containing a list of ten Whataburger gift card numbers and the balance ($5) for each account. HSI agents then confirmed with Lyndon D. Richardson, the Enterprise Risk Management Group Director for Whataburger, that all ten account numbers correspond to valid, active Whataburger gift card accounts. Based on details provided by Mr. Richardson (the dates of activation and other details on the gift card numbers), the account numbers appear to have been stolen or obtained by fraud.

20.     On July 22, 2019, while in a physical location in Baton Rouge, Louisiana, I accessed the SUBJECT DOMAIN NAME #1 and noted all of the specific stores and gift card values being offered for sale. The stores are arranged alphabetically on the website, and the image below reflects the first row of cards offered for sale:



21. As of July 22, 2019, the website offered gift cards to more than 100 different restaurant chains and retail locations across the United States, and the site indicated that. Based on the number of gift cards represented to be "in stock" at the time (which totaled more than 1,000), and the face value of each card set, I conservatively estimated that the website had more than $1.1 million in stolen gift card account value advertised for sale at the time.

22. On August 21, 2019, HSI agents accessed the SUBJECT DOMAIN NAME #1 and conducted another undercover purchase. This time, agents purchased twenty gift cards for Fresh Market, a grocery store chain based in North Carolina with approximately 150 locations across the United States. On the website, the cards had a value of $25 each, and so twenty cards would be worth $500. Through the website, however, HSI was able to purchase all twenty cards for $100. As with the first undercover purchase, after HSI completed the purchase and sent payment, the HSI-controlled e-mail account, which was controlled by the Affiant in Baton Rouge, Louisiana, received an e-mail containing a list of gift card numbers and the balance for each card. HSI then confirmed with Ashley Twichell, a representative from Fresh Market's legal department, that all of the account numbers correspond to valid, active Fresh Market gift card accounts. Based on details provided by Ms. Twichell (specifically, that the accounts were activated between 2005 and 2015 across eight different states), the account numbers appear to have been stolen or obtained by fraud.

23. In early January 2021, HSI personnel visited the SUBJECT DOMAIN NAME #1 on numerous occasions to confirm that the site was still offering gift cards for sale and to compile a list of the cards and denominations still available. As of January 7, 2021, the website was offering gift cards to more than 350 different restaurant chains and retail locations across the United States. Based on the number of gift cards represented to be available for sale and the face

11

value of each card set, HSI personnel calculated that the website had more than $18.1 million in stolen gift card account value advertised for sale at the time.

24. In February 2022, HSI personnel visited the SUBJECT DOMAIN NAME #1 on numerous occasions to confirm that the site was still offering gift cards for sale and to compile a list of the cards and denominations still available. As of March 4, 2022, the website was offering gift cards to more than 500 different restaurant chains and retail locations across the United States. Based on the number of gift cards represented to be available for sale and the face value of each card set, HSI personnel calculated that the website had more than $22 million in stolen gift card account value advertised for sale at the time.

25. A search of publicly-available WHOIS domain name registration records revealed that the www.miami24k.com domain was registered on or about June 6, 2019 through the registrar Tucows Domains, Inc. ("Tucows"), which has its headquarters at 96 Mowat Avenue, Toronto, Ontario, M6K 3M1, Canada. The publicly available WHOIS database does not identify the name of the registrant, and the database indicates that the information has been "redacted for privacy."[2] Tucows allows website owners to keep their contact details private during the registration process. According to the database, accessed on March 25, 2022, the registration remains active and is not scheduled to expire until June 4, 2023.

26. Although the registrar for the SUBJECT DOMAIN NAME #1 is located in Canada, the registry is VeriSign, which, as indicated above, is located within the United States.

---

[2] Interestingly, database identifies the registrant's "country code" – the country where the registrant is purportedly located – as KN, which is an abbreviation for Saint Kitts and Nevis, an island country in the West Indies that, according to Wikipedia, is the smallest sovereign state in the Western Hemisphere by both size and population.

27. On March 25, 2022, while in a physical location in Baton Rouge, Louisiana, I checked the SUBJECT DOMAIN NAME #1 and confirmed that it still remains active.

*The "GG" Domain Name*

28. As discussed above, as of early 2019, VERRET was reportedly using a second domain name (giftcards.gg) (hereinafter "the GG Domain Name") to sell gift card account numbers. During the initial phase of this investigation, VERRET stopped using the GG domain name and began using the SUBJECT DOMAIN NAME #1.

29. The registrar for the GG domain name is located outside the United States. Accordingly, the United States did not seek authority to seize the GG domain name but rather will coordinate with foreign partners in an effort to stop the GG domain name from being used for criminal activity.

*Domain Name of [www.miami.gift](www.miami.gift)*

30. On March 17, 2022, while acting in an undercover capacity in a physical location in Baton Rouge, Louisiana, I noticed the subject advertising a new domain name of [www.miami.gift](www.miami.gift) (hereinafter "SUBJECT DOMAIN NAME #2") on one of his Telegram channels as shown below:

13



31.     On March 23, 2022, while in a physical location in Baton Rouge, Louisiana, I accessed the SUBJECT DOMAIN NAME #2. After accessing the site through the SUBJECT DOMAIN NAME #2, I verified that the site continued to offer gift cards for sale.

*Interview of Richard Verret*

32.     On March 24, 2022, a federal Grand Jury in the Middle District of Louisiana indicted RICHARD VERRET (22-22-SDD-SDJ) on five counts of Unauthorized Solicitation of Access Devices, in violation of 18 U.S.C. § 1029(a)(6) and one count of Trafficking Counterfeit

14

Access Devices, in violation of 18 U.S.C. § 1029(a)(1).  Based on the indictment, a federal arrest warrant was issued on March 24, 2022.

33.     On April 7, 2022, pursuant to the federal arrest warrant, HSI agents arrested RICHARD VERRET.  I gave Mr. VERRET a Miranda right form to read.  After Mr. VERRET read the form, I read to Mr. VERRET his rights per Miranda out loud.  Mr. VERRET stated that he understood his rights and signed the Miranda rights form, and further agreed to speak with another HSI agent and I.  This interview was audio-recorded.

34.     During the recorded interview, VERRET admitted that he committed a gift card scheme, knowing that it was not legal, because it was an easy way to make money.  He advised that he has made approximately $500,000 or possibly more from the sales of the stolen gift card information.  He used computer software and scripts to crack or generate gift card information from various companies, such as Whataburger, Fresh Market, Jimmy Johns, and Hooters, without the companies' knowledge or authority.  VERRET then sold the gift card numbers on his websites for a profit.  He also printed some of the stolen gift card information onto blank physical gift cards and kept them for his personal use.  VERRET stated that none of the companies gave him permission to sell or use their gift card information.  He presented the gift card information for sale on SUBJECT DOMAIN #1, SUBJECT DOMAIN #2, and giftcard.gg.  VERRET stated that these three domain names are re-directed and pointed to Miami.atshop.io where the gift card information was actually sold.  When the stolen gift card information was purchased by people online, VERRET received payments through coinpayments, Coinbase, and cashapp.  Once VERRET received payments via cashapp, he could not transfer the proceeds in cashapp to a Canadian-based bank so he transferred much of these funds to accounts at various banks based in the United States including CIBC Bank USA, Wells Fargo Bank, and Citizens Bank.  He further

15

advised that the money he made illegally from this gift card scheme was transferred into his Wells Fargo account, his Citizens Bank account, his CIBC Bank USA account, his Coinpayments app on his phone, and his Coinbase commerce account.

35. RICHARD VERRET stated that he opened an account at Wells Fargo Bank in approximately 2019 and began transferring money he made from selling stolen gift card numbers to that account. As the balance of the Wells Fargo Bank account grew larger with the exclusive proceeds of the fraudulent gift card scheme, he did not want the balance of the fraud proceeds in the Wells Fargo Bank account to get over $100,000 so he began transferring money he made from selling stolen gift card numbers into a CIBC Bank USA account which he opened several months ago. In his continued effort to avoid balances of over $100,000 in his bank accounts, VERRET opened an account at Citizens Bank when he went to Boston in November 2021 and transferred fraud proceeds from cashapp to this account at Citizens Bank. The balance in his Citizens Bank account is just under $100,000. He stated that he didn't do anything with the money in the SUBJECT ACCOUNTS and just left it in these accounts. He stated that it gave him a thrill. He also advised that, at one point, he was the biggest gift card fraudster in the world.

36. During the interview, VERRET stated that all of the money from the sale of the stolen gift card information that he deposited into the Wells Fargo Bank account is dirty money and is the proceeds of his gift card scheme. Mr. Verret also stated that all of the money from the sale of the stolen gift card information deposited into the Citizens Bank account is the proceeds of his gift card fraud. He further stated that all of the money from the sale of the stolen gift card information that he deposited into the CIBC Bank USA account is the proceeds of his fraudulent gift card scheme.

37. VERRET stated that he received debit cards from CIBC Bank USA, Wells Fargo Bank, and Citizens Bank, and showed me the debit cards. His CIBC Bank USA debit card had the number 5254 6200 0025 5817 and was in the name of Richard Verret. His Wells Fargo Bank debit card had the number 4737 0291 0331 8904 and was in the name of Richard Verret. His Citizens Bank debit card had the number 4427 8800 3223 8075 and was in the name of Richard Verret. HSI seized these three debit cards as evidence.

## Conclusion

38. Based on the information contained in this affidavit, I respectfully submit that there is probable cause to believe that SUBJECT ACCOUNT(S) #1, SUBJECT ACCOUNT(S) #2, and SUBJECT ACCOUNT(S) #3 contain the proceeds of violations of 18 U.S.C. § 1029(a)(1) (trafficking counterfeit access devices) and 18 U.S.C. § 1029(a)(6) (unauthorized solicitation of access devices) and, thus, are subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2)(B) and 18 U.S.C. § 981(a)(1)(C). Accordingly, I believe that there are sufficient grounds for the issuance of the three requested seizure warrants for the SUBJECT ACCOUNTS under 18 U.S.C. § 981(b) (civil seizure warrant authority) and 21 U.S.C. § 853(e) and (f) (criminal seizure warrant authority).

DARIUSH J VOLLENWEIDER
Digitally signed by DARIUSH J VOLLENWEIDER
Date: 2022.04.14 14:16:05 -05'00'

Special Agent Dariush Vollenweider
Department of Homeland Security
Immigration and Customs Enforcement
Homeland Security Investigations

Affidavit submitted by email/.pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on __April 14, 2022__.

HONORABLE ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

17

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>Funds up to $99,999.99 in the Wells Fargo Bank Deposit Accounts Associated with Debit Card No. 4737 0291 0331 8904 in the name of Richard Verrett | )<br>)<br>)   Case No. 22-mj-38<br>)<br>) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ District of __Arizona__ be seized as being subject to forfeiture to the United States of America. The property is described as follows:

Any and all funds up to $99,999.99 in the Wells Fargo Bank, N.A. deposit accounts associated with Wells Fargo Bank debit card number 4737 0291 0331 8904 in the name of Richard Verret.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before __April 27, 2022__
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to __Erin Wilder-Doomes__.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days (not to exceed 30)    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __4/14/2022 at 4:00 p.m.__                             *[signed] Erin Wilder-Doomes*
                                                                                                           *Judge's signature*

City and state: __Baton Rouge, Louisiana__                                  Erin Wilder-Doomes, Magistrate Judge
                                                                                                        *Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>22-mj-38 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date:  _____<br><br>_____<br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |